UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KARIN INGRID REZA,<br><br>                    Plaintiff,<br><br>      v.<br><br>REZA ALI, PROSIRIS CAPITAL<br>MANAGEMENT LP, and PROSIRIS GP LLC,<br><br>                    Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

As and for her complaint against Defendants REZA ALI ("Ali"), PROSIRIS CAPITAL MANAGEMENT LP ("Prosiris LP), and PROSIRIS GP LLC ("Prosiris GP" and, together with Ali and Prosiris LP, "Defendants"), Plaintiff KARIN INGRID REZA ("Plaintiff") alleges as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff entrusted an investment of millions of dollars to Investcorp Prosiris Opportunities Fund Limited, a Cayman Islands exempted company (the "Fund"), which reportedly, in turn, was transferred to Prosiris Global Master Fund Limited, a Cayman Islands exempted company (the "Master Fund").[1]

2.      After concerns relating to the Fund's performance, Plaintiff demanded redemption of her investment in accordance with the terms of the Fund and Master Fund. Defendant Ali acknowledged receipt of Plaintiff's demands and promised to honor them by times certain, which have since lapsed.

---

[1] Plaintiff is informed and believes that the Fund since changed its name to "Prosiris Global Opportunities Fund Limited," and that the Master Fund since changed its name to "Prosiris Global Opportunities Master Fund Limited."

3.      Plaintiff's investment remains nowhere to be found, and Plaintiff has encountered protracted delays, distractions, and obfuscations from Defendants in the face of Plaintiff's extensive, multifaceted, extrajudicial efforts, and efforts at discovery, to determine the whereabouts and status of her investment and to secure its redemption.

4.      Additionally, Defendants' repeated communications, misrepresentations, and management of Plaintiff's investment were conducted from New York, New York, including in–person meetings, telephone calls, and email communications. Critical witnesses, including Ali and representatives of JPMorgan, as well as relevant documents, are located in this District, further reinforcing jurisdiction and venue.

## PARTIES

5.      Plaintiff Karin Ingrid Reza is a natural person residing in and is a citizen of Switzerland. Notwithstanding her residency and citizenship, all of Defendants' actions alleged in this Complaint occurred in and were directed from the City, County, and State of New York.

6.      Defendant Prosiris GP, which is headquartered in the City, County, and State of New York, is the general partner of Prosiris LP and is controlled by Defendant Ali.

7.      Prosiris LP, which is headquartered in the City, County, and State of New York, is investment manager of both the Fund and the Master Fund and is controlled by Defendant Ali.

8.      Ali is a citizen and resident of the City, County, and State of New York. He is the chief executive officer of the Fund and controls both Prosiris GP and Prosiris LP, and he is responsible for the Fund's and the Prosiris entities' day-to-day operations.

9.      Defendant Prosiris GP is the general partner of Defendant Prosiris LP, which, in turn, is the Fund and the Master Fund's investment manager. Defendant Ali is chief executive officer and principal representative of Prosiris GP, Prosiris LP, the Fund, and the Master Fund.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332, as complete diversity of citizenship exists and there is more than $75,000 in controversy

in this case. Furthermore, this Court has found subject matter jurisdiction in a case that, like this

one, is an action by a foreign investor arising out of investments in an offshore fund, where the

fraudulent misrepresentations and omissions alleged by investors specifically involved conduct

undertaken in New York. *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 688 F.Supp.2d 303, 310-

11 (S.D.N.Y 2010).

11.     This Court has personal jurisdiction over Defendants pursuant, *inter alia*, to New

York CPLR 301, as Defendants are citizens of and domiciled in New York.

12.     Venue is proper in this District by virtue of 28 U.S.C. § 1391(b) and 28 U.S.C.

§ 1401. Defendants, directly and indirectly, made use of the means and instrumentalities of

interstate commerce, or of the mails, in connection with the transactions, acts, practices, and

courses of business alleged herein. A substantial portion of the acts and omissions giving rise to

this Complaint took place in this judicial district. All Defendants maintained an office in New

York City, where they conducted business, made telephone calls and sent emails to Plaintiff,

touted Plaintiff's redemption rights, and made misrepresentations to Plaintiff. Defendants

purposely availed themselves of the privilege of conducting activities within this judicial district

and therefore invoked the benefits and protection of its laws and its courts by residing and

conducting business here.

## STATEMENT OF FACTS

13.     On or about September 1, 2011, Plaintiff remitted more than US$1,000,000 for an investment (the "Investment") in the Fund. Plaintiff's Investment was wire transferred from a bank account of the Plaintiff outside of the United States of America to a bank account in the name of the Fund at JPMorgan Bank, a subsidiary of JPMorgan, in New York, New York. Plaintiff's Investment eventually increased to more than US$2,500,000.

14.     At all relevant times, Ali, a citizen and resident of New York, New York, and the chief executive officer of the Fund, acted on behalf of the Fund, Prosiris GP, and Prosiris LP in his dealings with Plaintiff and her Swiss counsel. All those dealings were controlled, orchestrated, and undertaken in and from New York, New York.

15.     Ali represented to Plaintiff that the Fund was investing its assets in the Master Fund; that the Fund and Master Fund's investment manager was Prosiris LP (the general partner of which is Prosiris GP, controlled by Ali and based in New York, New York); that the Master Fund's directors included Ali; that the Master Fund's prime brokers and custodians included J.P. Morgan Clearing Corp., in New York, New York, a subsidiary of JPMorgan; and that the Fund's administrator was J.P. Morgan Hedge Fund Services, a division of JPMorgan Bank, a subsidiary of JPMorgan. J.P. Morgan Clearing Corp. has since merged into J.P. Morgan Securities LLC. That vast predominance of critical witnesses and documents in this case are located in New York, New York, and in this circuit.

16.     To induce the Investment, in 2011, Defendants provided Plaintiff a document titled "SUBSCRIPTION DOCUMENTS FOR NON-U.S. INVESTORS" (the "Subscription Agreement"). While Plaintiff filled out and returned the Subscription Agreement to Defendants, Plaintiff has no record of ever receiving it back from any of the Defendants. Not until after the

Investment was made did Plaintiff receive any private placement memorandum or other disclosure document concerning the proposed or effectuated Investment.

17.     Plaintiff is informed that a Private Placement Memorandum ("PPM") for the Fund was issued in or around October 2013. The PPM made various representations and promises to potential investors regarding their redemption rights, and the representations and promises relevant to Plaintiff's unpaid redemptions are set forth as follows in the section titled "Redemptions and Transfers":

a.  Shareholders could redeem all or a portion of their investments (in amounts of $500,000 or more) as of the last business day of any calendar quarter upon 90 days prior written notice.

b.  The Board had the power to allow redemptions at different times or on shorter notice.

c.  Redemptions could be prohibited under Cayman law, generally in the event of losses.

d.  The Fund generally paid its redeeming shareholders their proceeds within 30 calendar days following the relevant redemption date. In the event that a shareholder were to redeem more than 90% of his, her, or its outstanding shares on any given redemption date, the Fund could withhold a maximum of 10% of the proceeds for an unspecified additional period of time at the Board's discretion. In that event, withheld proceeds would be paid within 90 calendar days following the redemption date, but in any event no later than 15 calendar days following the completion of the Fund's next annual (or final) audit.

e.  The Fund could pay redemption proceeds in kind out of its assets.

f.      In–kind distributions could be paid into a liquidating trust or account. However, the PPM was not provided to Plaintiff until January 24, 2025, when Ali's counsel emailed a copy to Plaintiff's counsel.

18.     After becoming aware that the Fund was losing money and investors, and that the Fund had promised investors redemption rights,  Plaintiff requested a partial redemption, and on or about January 31, 2023, she received a redemption payment for $637,235.51.

19.     Except as otherwise stated or the context otherwise indicates, all communications alleged below, were made in writing, by electronic mail, to Ali, or from Ali, on behalf of all Defendants.

20.     On or about February 28, 2023, Plaintiff informed Ali that she wished to redeem all of her remaining shares.

21.     Following Plaintiff's redemption request, Ali represented to Denise Elfen, Plaintiff's investment advisor at the time, that all of Plaintiff's money would be refunded by the end of July 2023. On May 2, 2023, Plaintiff requested that Ali confirm that representation in writing. After Ali failed to respond, Plaintiff renewed her request to redeem in the amount of $2,581,012 on May 7, 2023.

22.     On May 10, 2023, Ali represented that the Fund was winding down by July 31, 2023, and that Plaintiff would be paid soon thereafter. Neither of these events occurred.

23.     On August 22, 2023, Plaintiff's Swiss counsel renewed Plaintiff's demand for redemption. Defendants did not respond.

24.     On September 8, 2023, Plaintiff contacted Ali to renew her request for information about when she would be paid and informed Ali to communicate with her other financial advisor, Pierre Hillion. That same day, Mr. Hillion requested the Fund's "latest audited

figures and the latest accounts statements of the fund even if unaudited," along with a calendar for Plaintiff's redemptions. The Fund had produced no audited financial statements since in or about 2021.

25.     Defendants did not respond, and Mr. Hillion renewed his requests on September 19, 2023. Defendants did not respond, even after Plaintiff reached out to him personally on November 15, 2023, requesting that he respond to Mr. Hillion.

26.     In or around December 2023, the Fund's statements were uploaded to the platform of SS&C, the Fund's administrator. Those statements appeared to show that Plaintiff had made four redemption requests, and that Plaintiff had been paid all of them, but Plaintiff had only received one payment, as set forth above, on or about January 31, 2023. That notwithstanding, the statements falsely claimed that Plaintiff had received the following redemption payments related to redemption requests made for January 1, April 1, and July 1, 2023:

     a.     January 1, 2023: $569,835.32

     b.     April 1, 2023: $566,388.33

     c.     July 1, 2023: $530,968.65

The statements also indicated that as of December 22, 2023, Plaintiff had a balance (following the supposedly paid redemptions) of $534,639 on July 31, 2023, the day that Ali had claimed the Fund would be wound down.

27.     On January 17, 2024, David Wilson, Plaintiff's Swiss counsel, contacted Ali about the account statements uploaded in December 2023 and demanded proof of SWIFT orders evidencing the redemption payments claimed in the account statements, along with the transfer of all redemptions, balances and funds owed to Plaintiff. Defendants did not respond, and Mr.

Wilson renewed Plaintiff's demand on January 22, 2024. Again, Ali did not respond.

28.    On or around January 25, 2024, SS&C posted a statement indicating the existence of a fourth redemption request from August 2023. Mr. Wilson demanded answers, but again Ali did not respond. On January 31, 2024, Mr. Wilson renewed his demand for answers, but Ali did not respond.

29.    On February 3, 2024, Mr. Wilson again asked Ali where Plaintiff's money was. Ali responded on February 6, 2024, claiming that fund statements were being finalized and the Fund would be "caught up" on its statements by the end of the first quarter and that he had told Plaintiff verbally in December 2023 that the Fund was "in the process of full liquidation" and that he expected all redemptions "to be processed fully" by March 31, 2024. The next day, February 7, 2024, Mr. Wilson again asked Ali where Plaintiff's funds were.

30.    On February 9, 2024, Ali finally responded, claiming that "adverse market conditions" had "delayed the liquidation process" and assured Mr. Wilson that the redemptions would be paid that quarter.

31.    On February 14 and 28, 2024, Mr. Wilson attempted to obtain the requested information from the Fund's other directors, John Ackerley and Peter Heaps, in writing, but received a nonsubstantive response.

32.    On or around February 29, 2024, Ali finally responded, this time claiming that Plaintiff's advisors, and specifically Ms. Elfen, had "agreed [to] deferring the redemptions until market conditions were much more favorable." He also claimed that Plaintiff agreed to the delay during a lunch meeting in New York on December 23, 2023, at which he represented that the two had "agreed that her redemptions would happen by the end of Q1 2024." Finally, Ali promised that the redemptions "will definitely be processed by March 31, 2024."

33.    On March 13, 2024, with the end of "Q1" looming, Mr. Wilson responded to Ali, noting that the "adverse market conditions" claim was a new excuse and made little sense in light of the fact that one of Plaintiff's redemptions was paid out in 2023, whereas the rest were outstanding for no apparent reason. Mr. Wilson demanded a statement showing where the money was, immediate payment of the outstanding redemptions, and a default interest payment of 5%. Ali never responded.

34.    On March 25, 2024, with the end of "Q1" and the promised date of redemption imminent, Mr. Wilson followed up with Ali and reminding Ali of his promise to pay by the end of the quarter.

35.    The next day, March 26, 2024, Ali backtracked, splitting hairs to represent that Plaintiff's full redemption would only be "processed" by the end of the quarter and that payment would not be by the end of the quarter, but "shortly thereafter." Mr. Wilson responded to Ali on March 28, 2024, indicating that he would "infer from [Ali's] email that [Plaintiff] will receive 2,223,517.60 USD by the end of this month."

36.    Plaintiff did not receive her payment by the end of March 2024. Instead, Mr. Wilson received an email from Ali on April 8, 2024 claiming that the redemption payments were "expected to be paid within the next 2-3 weeks."

37.    Two weeks later, the payment had not arrived. On April 22, 2024, Mr. Wilson contacted Ali and demanded the funds ($2,223,517.60) by the end of the week and that Ali provide a bank statement evidencing where Plaintiff's funds were being held.

38.    Payment did not arrive, not within two weeks, not within three weeks, and not within a week of Mr. Wilson's April 22, 2024 demand. On May 10, 2024, more than one month after the "2-3 weeks" representation, Mr. Wilson asked Ali point–blank: "Where are my client

funds?!?"

39.    In the face of this increasing pressure and the likelihood that Plaintiff would file suit, Ali then emailed Plaintiff directly that same day and informed her (again) that the Fund was winding down and that despite the fact that she had requested a full redemption, she would be paid out "on a pari passu basis with other fund shareholders after the liquidation date," which at this point Ali claimed would be July 31, 2024.

40.    On May 13, 2024, Ali contacted Mr. Wilson with new excuses, claiming that payment had "taken a little longer than anticipated. But we do expect the redemption payments to be released in the coming weeks." Mr. Wilson responded on May 17, 2024, asking again when the payments would be released.

41.    On or around May 20, 2024, Plaintiff's son, Olivier Reza, spoke with Ali, who agreed to immediately send the Fund's 2023 financial statements, which Mr. Wilson had been requesting for months with no satisfaction. In a May 21, 2024, email memorializing the representations Ali made to Olivier Reza, Mr. Wilson again renewed his demand to know when Plaintiff would receive her funds.

42.    On May 23, 2024, Andrew Day, a senior associate at SS&C, emailed Plaintiff purporting to "confirm" that the Fund had a "redemption payable amount" to her of $2,223,517.60 and that the payment was backed by Fund assets in that amount, but that the payment would be made from "liquidation proceeds arising from the sale of the Fund assets" at some unspecified time. Mr. Day also admitted that 2023 audited financial statements were still not available. Mr. Wilson responded to both Ali and Mr. Day on May 29 asking when the financial statements would be available, requesting an attestation similar to that of Mr. Day from the Fund's auditor Ernst & Young, and a specific date upon which Plaintiff would receive the

funds. He received no response and renewed his request by email of June 14, 2024.

43.    On July 10, 2024, Plaintiff requested again to redeem all of her shares. On that date, Mr. Day confirmed that Plaintiff had a redemption amount payable to her of $2,223,517.60. Mr. Day also confirmed to Plaintiff that the payable amount was backed by Fund assets in that amount as apportioned to her shares, based on the December 31, 2023, financials..

44.    On September 2, 2024, Plaintiff filed an *ex parte* application with this Court, Case No. 24-MC-442(AS), to take discovery (hereinafter, the "Discovery Matter") pursuant to 28 U.S.C. § 1782, as Plaintiff intended to file suit against the Fund and Master Fund in the Cayman Islands.

45.    On September 25, 2024, in the wake of the filing of the Discovery Matter, Ali contacted Mr. Hillion seeking a meeting.

46.    On December 31, 2024, with the Discovery Matter pending and Plaintiff and her counsel continuing to press the issue of redemption, Ali issued a Fund notice (the "Notice") to investors that it would wind down and suspend the redemption of *all* shares to any "redeeming shareholders," retroactive to December 12, 2024. In the Notice, Ali claimed that all redemptions would occur on January 31, 2025, but that payment of those redemptions would be "delayed" for an indefinite period of time.

47.    Notwithstanding that Ali had repeatedly referred to Plaintiff as a "creditor" and not a "shareholder" following her full redemption requests, the Notice by its terms reference "remaining shareholders (including redeeming shareholders) and former shareholders," apparently attempting to reclassify Plaintiff, for the first time, in an effort to thwart her from exercising her rights as the creditor that Defendants had previously insisted that she was.

48.    Finally, on January 31, 2025, Defendants admitted that they would not

imminently pay Plaintiff, announcing that as of that date, all current and former shareholders would be paid redemption proceeds through an in–kind distribution of the assets of the Fund. In that announcement, Defendants also indicated that even the in-kind distribution would not go directly to Plaintiff, as she had been promised, but that the assets would be placed into a "liquidating account" for the purpose of an "efficient" sale.

49.     Later, Defendants represented that Plaintiff had "no right to complain" about the disappearance of her Investment because the PPM, upon which Defendant had not relied for its previous delays and failures to pay, and which had not until January 24, 2025 been delivered to Plaintiff, only after the Plaintiff commenced litigation in the Discovery Matter, authorized an (apparently indefinite) delay in payment. This after Defendants repeatedly promised immediate payment in full, including by dates certain.

50.     On February 13, 2025, at a hearing in the Discovery Matter, counsel for Defendants represented to the Court that Plaintiff's money was "in the Prosiris funds accounts … represented in the securities held by the Fund along with every other investor or former investor." When the Court directly demanded to know the reason for the "holdup" in paying the redemption, counsel represented that "the securities that are held by the funds are illiquid."

51.     As of May 2, 2025, the Fund still had no audited financial statements for 2022, 2023, 2024, or later. And Ali blamed the most recent wind–down and illiquidity of the Fund for the two-years-and-counting delay.

52.     In publicly available statements made in the Discovery Matter, Defendants maintained that, as far as the Fund is concerned, Plaintiff is considered a creditor, not a

shareholder, and that she had been considered a creditor *before* the December announcement that redemptions would be suspended.[2]

53.     Ali also admitted that he had represented to Plaintiff and her representatives, beginning in or around 2023, that she would receive a cash redemption by dates certain, while also admitting that redemption timing was a function of "when the cash is there," a fact that Ali concealed from Plaintiff. Ali promised cash payments repeatedly to Plaintiff, including by dates certain, without condition.

54.     Ali's current position as to why the funds have still not been paid is a lack of liquidity in the Fund.[3] But Ali never communicated this information to Plaintiff during 2024, the period during which he claims he was "waiting" for resolution of the settlement. Moreover, Ali has admitted that he had no basis to believe there would be this liquidity at the times he promised cash payments to Plaintiff by times and dates certain, and without mention of any liquidity concerns or conditions.

55.     Ali additionally takes the position that the Fund's redemption obligations have been met because Plaintiff has been "redeemed" on paper, and that it is permissible that the redemptions have not actually been paid because they have been "processed."

---

[2] A protective order was entered in the Discovery Matter. Plaintiff intends to seek relief of the protective order for the purposes of use of the discovery obtained in the Discovery Matter for and in this action. Plaintiff will seek to amend this Complaint, as may be necessary or desirable, to incorporate such matters herein.

[3] Additional specifics were set forth in Ali's deposition, of which Defendants are well aware. In an abundance of caution, these specifics are not detailed here pending relief from the protective order entered in the Discovery Matter.

## LEGAL CLAIMS

## FIRST CLAIM FOR RELIEF

### (For Common–Law Fraud, Against All Defendants)

56.    Plaintiff repeats, realleges, and incorporates herein by reference, all preceding and succeeding paragraphs as if set forth in their entirety herein.

57.    Defendant Ali made at least eleven (11) separate statements of material fact that a reasonable person would, and that Plaintiff did, consider important: that the Fund could and would make the cash redemptions requested by Plaintiff at the times that Ali promised Plaintiff they would be made. These statements, all of which Defendant Ali made from or in New York, New York, were as follows:

a.    Sometime between February 28, 2023, and May 2, 2023, Defendant Ali represented to Denise Elfen, Plaintiff's then-investment advisor, that all of Plaintiff's money would be refunded by the end of July 2023. On information and belief, Defendant Ali made this statement to Ms. Elfen in a telephone conversation.

b.    On May 10, 2023, Defendant Ali represented, in an email to Plaintiff and Ms. Elfen, that the Fund was winding down by July 31, 2023, and that Plaintiff would be paid soon thereafter.

c.    In December 2023, Defendant Ali represented to Plaintiff, at a lunch meeting in New York, New York, that the Fund was in the process of full liquidation and that he expected all redemptions to be "processed fully" by March 31, 2024.

d.    On February 6, 2024, Defendant Ali repeated his December 2023

representation to Mr. Wilson: that the Fund was in the process of full liquidation and that he expected all redemptions to be "processed fully" by March 31, 2024.

e.  On February 9, 2024, Defendant Ali represented to Mr. Wilson by email that the redemptions would be made that quarter.

f.  On or around February 29, 2024, Defendant Ali represented in a letter to Mr. Wilson that Plaintiff's redemptions "will definitely be processed by March 31, 2024."

g.  On March 26, 2024, Defendant Ali represented to Mr. Wilson via email that Plaintiff's full redemption would be "processed" by the end of the quarter and that payment would be made "shortly thereafter."

h.  On April 8, 2024, Defendant Ali represented to Mr. Wilson via email that Plaintiff's redemptions were "expected to be paid within the next 2-3 weeks."

i.  On April 22, 2024, Defendant Ali represented to Plaintiff via email that the Fund was winding down and that she would be paid "on a pari passu basis with other fund shareholders after the liquidation date," which Defendant Ali claimed would be July 31, 2024.

j.  On May 13, 2024, Defendant Ali represented to Mr. Wilson by email that "we do expect the redemption payments to be released in the coming weeks."

k.  On December 31, 2024, Defendant Ali represented to Plaintiff and the Fund's other shareholders that "all" redemptions would occur on January

31, 2025, and that although the redemptions would be "delayed," that "former shareholders" (i.e., Plaintiff) who were unpaid before the Fund suspended redemptions retroactive to December 12, 2024, would have priority in payment.

58.     Defendants also knowingly caused false redemption statements, coming from Plaintiff and SS&C, to be issued to Plaintiff, misrepresenting that redemptions had been paid when they had not, and, in those statements and in the Discovery Matter, misrepresenting that Plaintiff's redemptions were tied directly to and backed by Fund assets.

59.     Defendant Ali's statements are actionable because they constituted clear statements of fact, to wit, Ali's statement that Plaintiff "will" be paid by various dates in response to Plaintiff's questions and concerns expressed on approximately twenty–five (25) separate occasions, when the truth was that Defendant Ali had no intention of paying Plaintiff at the time his various statements were made.

60.     Defendants' misrepresentations were not mere aspirational statements or forward-looking opinions, but rather present statements of fact regarding the Fund's ability and intention to redeem Plaintiff's investment, made at times when Defendants knew they had no intention of making the payments or lacked liquidity, and thus knew the statements were false.

61.     Defendant Ali's statements were false in that, taken as a whole, they communicated something that was untrue (specifically, that Plaintiff would be paid on her redemption requests at specific times) when considered from the viewpoint of an ordinary person.

62.     Defendant Ali's misrepresentation was material in that it induced Plaintiff to refrain from taking action against Ali and the companies he controlled (Defendants Prosiris GP

and Prosiris LP) and on whose behalf he was speaking to exercise her rights as a creditor to retrieve her money. *See*, *e.g.*, *Starr Foundation v. American Intl. Group, Inc.*, 901 N.Y.S.2d 246 n.5 (N.Y. Sup. Ct. 1st Dept. 2010) (creditor may state a claim it was fraudulently induced to forbear from taking steps to collect a debt). Defendant Ali admitted at his May 2, 2025 deposition that the Fund considered Plaintiff a creditor, not a shareholder, well before the December 2024 announcement that redemptions would be suspended. However, Defendant Ali concealed that fact from Plaintiff, leading her to believe that waiting for a shareholder redemption was her only option.

63.     Defendant Ali either knew that his statements were false, or he made the statements recklessly without regard to whether they were true or false. The contemporary falsity of Defendant Ali's statements was definitively revealed in the Discovery Matter wherein Defendants admitted that throughout 2024, they knew that the Fund did not have the liquidity to pay Plaintiff's redemption on the specified dates. In other words, Defendants promised that Plaintiff would be paid throughout 2024 knowing all the while that the Fund would not deliver. These circumstances show that Defendants were acting either consciously or recklessly. They also show that Defendant Ali had a strong motive to commit fraud—specifically, the desire to avoid creditor litigation—and a clear opportunity to do so through ongoing correspondence with Plaintiff and her representatives.

64.     Defendants had no reasonable basis to believe that the Fund could make the cash redemptions at the time they promised Plaintiff they would be made, as they were aware at all relevant times that there was no reasonable basis upon which to conclude the Fund would commit, or would possess, the necessary liquidity to pay Plaintiff.

65.     Ali made his many statements to Plaintiff that she would be paid on specific dates

for the purpose of convincing Plaintiff that payment was just around the corner, thus inducing and baiting her to forbear, and then switching by relegating her to instituting time–consuming and expensive litigation against the Fund as a creditor to obtain return of her funds. Plaintiff acted in the manner that was reasonably contemplated by Ali when he made the various statements: by showing patience.

66.    Plaintiff was ignorant of the falsity of Defendants' statements because she was following the appropriate redemption procedure, which in the past had resulted in the fulfilment of a redemption request, and Defendants repeatedly reassured her and her counsel that payment was forthcoming and certain.

67.    Plaintiff did rely on Ali's statements by exercising patience, waiting for the redemption to be paid in accordance with Ali's representations, and declining to institute creditor litigation.

68.    Plaintiff's reliance on Defendants' statement was justifiable in that a reasonable person would follow the well–established redemption procedure that the Fund had used with Plaintiff and other Fund investors and would follow the instructions of the Fund's chief executive, Ali, to complete the process, without further effort to determine the truth or accuracy of his statements.

69.    Plaintiff's forbearance was misused by Defendants to orchestrate a purported liquidating trust, as yet another device to defraud the Plaintiff, and as a ruse to feigning compliance with Fund covenants and a PPM never delivered to Plaintiff until after the ruse was conceived.

70.    Plaintiff's reliance on Ali's statements was the legal and proximate cause of her damages, which consist of a pecuniary loss of $2,581,012.

71.    The corporate defendants, Prosiris LP and Prosiris GP, are liable for Ali's fraudulent acts and statements because they were committed within the scope of Ali's actual and apparent authority. In the alternative, the corporate defendants may be liable for Ali's acts and statements even if they were outside the scope of his authority because Prosiris LP and Prosiris GP ratified those acts and statements and retain benefits derived from them (i.e., Plaintiff's money) to this day.

72.    Because Defendants' conduct involved intentional or deliberate wrongdoing; aggravating, egregious, or outrageous circumstances involving malice or oppression; a fraudulent or evil motive; and a reckless, willful, or wanton disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

## SECOND CLAIM FOR RELIEF

### (For Negligent Misrepresentation, Against All Defendants)

73.    Plaintiff repeats, realleges, and incorporates herein by reference, all preceding and succeeding paragraphs as if set forth in their entirety herein.

74.    Plaintiff and Ali had a special, privity–like relationship imposing a duty on Ali to impart correct information to Plaintiff about, *inter alia*, the status of her redemption requests and the date of payment. Plaintiff and Ali's relationship involved more than an ordinary arm's-length business transaction, because Ali had unique and specialized expertise in the workings of his own funds and controlled companies. Furthermore, Ali was in a position of confidence and trust with Plaintiff, as he had a long history with her son and he purported to give Plaintiff advice about the optimal timing of her redemptions. *Cf. Chanin v. Machcinski*, 31 N.Y.S.3d 492 (Sup. Ct. N.Y.A.D. 2016) (special relationship existed between hedge fund investors and fund's outside counsel where fund's counsel provided plaintiffs with specific answers to their questions

about regulatory activity targeting the fund, which answers plaintiffs relied upon to their detriment).

75.    Ali provided certain information about the status of Plaintiff's redemption requests and the date of payment. More specifically, Ali represented to Plaintiff that her redemption requests were being fulfilled and that she would be paid on specific dates. That information was incorrect.

76.    Plaintiff reasonably relied on Ali's information to her detriment. Her reliance was justified because of Ali's expertise, history with her family, and provision of investment advice related to the timing of her redemptions.

77.    As a direct and proximate result of Ali's negligent misrepresentations, Plaintiff was damaged in an amount to be proven at trial, but not less than $2,581,012.

78.    The corporate defendants, Prosiris LP and Prosiris GP, are liable for Ali's negligent misrepresentations because they were committed within the scope of Ali's actual and apparent authority. In the alternative, the corporate defendants may be liable for Ali's negligent misrepresentations even if they were outside the scope of his authority because Prosiris LP and Prosiris GP ratified those acts and statements and retain the benefits derived from them (i.e., Plaintiff's money) to this day.

## THIRD CLAIM FOR RELIEF

### (For Breach of Fiduciary Duty, Against All Defendants)

79.    Plaintiff repeats, realleges, and incorporates herein by reference, all preceding and succeeding paragraphs as if set forth in their entirety herein.

80.    Defendants owed Plaintiff the fiduciary duties of, *inter alia*, care, loyalty, full disclosure, and candor in managing her assets and in reporting to her concerning them.

81.    Although Defendant Ali is the chief executive of the Fund's investment manager, he created a person–to–person, fiduciary relationship with Plaintiff in which he rendered investment advice, for example, by advising Plaintiff to refrain from pressing her redemption claim in December 2023 because of the interest rate environment.

82.    Defendants' superior position and superior access to confidential information was so great as virtually to require the Plaintiff to repose trust and confidence in the Defendants and the Defendants were under a duty to act for or to give advice for the benefit of Plaintiff upon matters within the scope of the relations. Plaintiff reposed confidence in Defendants and reasonably relied on Defendants' superior expertise and knowledge.

83.    The fiduciary duties Defendants owed to Plaintiff require Defendants, *inter alia*, to act in Plaintiff's best interests, to be truthful with her, and to avoid conflicts of interest.

84.    Instead of acting in Plaintiff's best interests, being truthful with her, and avoiding conflicts of interest, Defendants strung her along over the course of nearly two years with false representations that her redemption payments were imminent when Defendants knew that they were not, privileging their interests in avoiding creditor litigation against the Fund and the various Prosiris entities that Ali controlled over Plaintiff's interest in obtaining the proceeds of her duly–requested and agreed redemption.

85.    Defendants' failure to effect the fulfillment of the Fund's redemption obligations, along with his numerous misrepresentations of the Fund's ability to return Plaintiff's investment, represent a negligent, reckless, wanton, and willful failure to fulfill the duties of loyalty, care, full disclosure, and candor that Defendants owed to Plaintiff.

86.    As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff was damaged in an amount to be proven at trial, but not less than $2,581,012.

87.     The corporate defendants, Prosiris LP and Prosiris GP, are liable for Ali's breaches of fiduciary duty because they were committed within the scope of Ali's actual and apparent authority. Moreover, the corporate defendants may be liable for Ali's breaches of fiduciary duty even if they were outside the scope of his authority because Prosiris LP and Prosiris GP ratified those acts and statements and retain the benefits derived from them (i.e., Plaintiff's money) to this day.

88.     Because Defendants' conduct involved intentional or deliberate and intentional deceit and wrongdoing; aggravating, egregious, or outrageous circumstances involving malice or oppression; a fraudulent or evil motive; and a reckless, willful, or wanton disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

### FOURTH CLAIM FOR RELIEF

### (For Unjust Enrichment, Against All Defendants)

89.     Plaintiff repeats, realleges, and incorporates herein by reference, all preceding and succeeding paragraphs as if set forth in their entirety herein.

90.     Defendants were unjustly enriched through their retention of Plaintiff's $2,581,012 investment that she repeatedly requested to redeem, which Defendants promised to redeem, which they represented were redeemed, but which they kept, in whole or part.

91.     Defendants' enrichment came at Plaintiff's expense, as the funds are rightfully hers.

92.     It is against equity and good conscience to permit Defendants to retain the funds that Plaintiff seeks to recover.

93.     The corporate defendants, Prosiris LP and Prosiris GP, are liable for Ali's actions in failing to effect the redemptions because they were committed within the scope of Ali's actual

and apparent authority. In the alternative, the corporate defendants may be liable for Ali's actions

even if they were outside the scope of his authority because Prosiris LP and Prosiris GP ratified

those actions and statements and retain the benefits derived from them (i.e., Plaintiff's money) to

this day.

## FIFTH CLAIM FOR RELIEF

### (For Conversion, Against All Defendants)

94.     Plaintiff repeats, realleges, and incorporates herein by reference, all preceding and

succeeding paragraphs as if set forth in their entirety herein.

95.     Defendants wrongfully exercised dominion and control over Plaintiff's

specifically identifiable funds—her redemption proceeds—by refusing to remit them to her upon

demand.

96.     Plaintiff's funds were segregated, specific, identifiable, ascertainable, and

repeatedly acknowledged by Defendants as owed and payable.

97.     Defendants' retention of those funds constitutes conversion under New York law.

98.     As a direct and proximate result of Defendants' conversion, Plaintiff was

damaged in an amount to be proven at trial, but not less than $2,581,012.

99.     The corporate defendants, Prosiris LP and Prosiris GP, are liable for Ali's

breaches of fiduciary duty because they were committed within the scope of Ali's actual and

apparent authority. Moreover, the corporate defendants may be liable for Ali's conversion even

if they were outside the scope of his authority because Prosiris LP and Prosiris GP ratified those

acts and statements and retain the benefits derived from them (i.e., Plaintiff's money) to this day.

100.    Because Defendants' conduct involved intentional or deliberate and intentional

deceit and wrongdoing; aggravating, egregious, or outrageous circumstances involving malice or

oppression; a fraudulent or evil motive; and a reckless, willful, or wanton disregard for Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

## SIXTH CLAIM FOR RELIEF

### (For Promissory Estoppel, Against All Defendants)

101.    Plaintiff repeats, realleges, and incorporates herein by reference, all preceding and succeeding paragraphs as if set forth in their entirety herein.

102.    Defendants made repeated clear and unambiguous promises to Plaintiff that her redemptions would be paid by dates certain. Plaintiff reasonably relied on those promises to her detriment, including by forbearing from creditor litigation.

103.    Justice requires enforcement of those promises, and Defendants are estopped from denying them.

104.    As a direct and proximate result of Defendants' breached promises, Plaintiff was damaged in an amount to be proven at trial, but not less than $2,581,012.

105.    The corporate defendants, Prosiris LP and Prosiris GP, are liable for Ali's breaches of fiduciary duty because they were committed within the scope of Ali's actual and apparent authority. Moreover, the corporate defendants may be liable for Ali's conversion even if they were outside the scope of his authority because Prosiris LP and Prosiris GP ratified those acts and statements and retain the benefits derived from them (i.e., Plaintiff's money) to this day.

## SEVENTH CLAIM FOR RELIEF

### (For Accounting, Against All Defendants)

106.    Plaintiff repeats, realleges, and incorporates herein by reference, all preceding and succeeding paragraphs as if set forth in their entirety herein.

107.    By reason of Defendants' confidential and fiduciary duties and control over

Plaintiff's assets, an accounting is necessary to determine the true status of the Fund's assets, liabilities, and Plaintiff's redemption proceeds.

108.    Money and property were entrusted to the Defendants by the Plaintiff imposing upon Defendants a burden of accounting;

109.    There is no adequate legal remedy in that the whereabouts and extent of Plaintiff's funds held by Defendants or the Funds cannot otherwise be ascertained

110.    Plaintiff has demanded an accounting of Defendants but Defendants have actually and effectively refused.

111.    Plaintiff is entitled to a full accounting of all funds received, managed, transferred, or retained by the Fund, the Defendants, and their respective affiliates.

112.    In addition to returning the money and property to the Plaintiff, Defendants must return to Plaintiff any profits generated by the use of the money and property.

## EIGHTH CLAIM FOR RELIEF

### (For Constructive Trust, Against All Defendants)

113.    Plaintiff repeats, realleges, and incorporates herein by reference, all preceding and succeeding paragraphs as if set forth in their entirety herein.

114.    There existed a confidential or fiduciary relationship as between Plaintiff and Defendants.

115.    Defendants made express and implied promises to Plaintiff not to dissipate the assets with which Plaintiff's promised redemption was to be paid.

116.    A transfer was made of those funds to Defendants and persons other than the Plaintiff.

117.    Defendants were unjustly enriched.

118.    Defendants hold funds and assets that in equity and good conscience belong to Plaintiff. A constructive trust should be imposed over those assets.

## NINTH CLAIM FOR RELIEF

### (For Declaratory Judgment, Against All Defendants)

119.    Plaintiff repeats, realleges, and incorporates herein by reference, all preceding and succeeding paragraphs as if set forth in their entirety herein.

120.    Defendants have maintained and admitted that Plaintiff is a creditor of the Fund. Yet, conversely, the Defendants reverted to a claim that Plaintiff is a shareholder of the Fund, with rights subordinate to that of creditors, and diluted by rights of shareholders of the Fund.

121.    Plaintiff maintains that she is a creditor of the Fund.

122.    An actual controversy exists between the parties that is ripe for adjudication. The controversy is definite and concrete, touching the legal relations of parties with adverse legal interests. The controversy is substantial and real, not hypothetical.

123.    The controversy is immediate and real, to warrant judicial intervention.

124.    A declaratory judgment here will serve a useful purpose in clarifying and settling the legal relations at issue, and it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding, including, without limitation, by determining whether Plaintiff is a creditor or shareholder of the Fund, with attendant rights and remedies.

125.    Such a judgment would admit of specific relief through a decree of a conclusive character, as opposed to an advisory opinion on hypothetical facts.

126.    Thus, Plaintiff seeks a declaratory judgment that she is a creditor of the Fund, entitled to priority payment of her redemption proceeds, and not a mere shareholder subject to delayed liquidation distributions.

## PRAYER FOR RELIEF

Wherefore, Plaintiff hereby respectfully demands judgment in her favor and against Defendants as hereinabove set forth and as follows:

    A.     For compensatory damages in the amount of $2,581,012 for Defendants' fraudulent misrepresentation;

    B.     For punitive damages in an amount to be determined at trial in this matter for Defendants' fraudulent misrepresentation;

    C.     For compensatory damages in the amount of $2,581,012 for Defendants' breach of fiduciary duty;

    D.     For punitive damages in an amount to be determined at trial in this matter for Defendants' breach of fiduciary duty;

    E.     For compensatory damages in the amount of $2,581,012 for Defendants' negligent misrepresentation;

    F.     For restitution in the amount of $2,581,012;

    G.     For compensatory damages in the amount of $2,581,012 for Defendants' conversion;

    H.     For punitive damages in an amount to be determined at trial in this matter for Defendants' conversion;

    I.     For damages and equitable enforcement under the doctrine of promissory estoppel;

    J.     For a full and complete accounting of all Fund assets, liabilities, and transactions relevant to Plaintiff's Investment and redemption proceeds, and including return of all of Plaintiff's property and monies and disgorgement of all profits and

returns thereon;

K.      For imposition of a constructive trust over all assets and funds wrongfully

        retained by Defendants belonging in equity to Plaintiff;

L.      For a declaratory judgment that Plaintiff is a creditor, not a shareholder, and

        entitled to priority redemption payment, and not a shareholder subject to delayed

        liquidation;

M.      For restitution and disgorgement of any profits unjustly earned through misuse of

        Plaintiff's funds;

N.      For an award of Plaintiff's costs and reasonable attorney fees as permitted by law;

        and

O.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands a trial by jury on all issues so triable.

Dated: August 16, 2025

                                        Respectfully submitted,


                                        *Pro Hac Vice forthcoming:*

                                        **JONATHAN LEE BORSUK PC**
                                        *Attorneys for Plaintiff, Karin Ingrid Reza*

                                        By: _____
                                                Jonathan Lee Borsuk, Esq.


                                        222 North Canon Drive
                                        Suite 203
                                        Beverly Hills, California 90210
                                        Phone: (424) 293-8100
                                        Phone: (917) 362-7561
                                        Facsimile: (917) 725-9676
                                        Email: jonathan@jlborsuk.com